THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v. LOUIS ZELEZNIK, Appellant.

(Argued November 26, 1934; decided December 31, 1934.)

*Joseph Cohn, Earl J. Garey, Meyer Machlis* and *Mitchel J. Valicenti* for appellant. Since the meat was duly inspected and passed " by a duly authorized inspection of the United States Department of Agriculture " and had been both stamped and labeled as provided by the Federal laws and regulations, the ordinance was fully complied with. ( *United States* v. *Rohe ·& Bro.*, 218 Fed. Rep. 182; *State* v. *Peet*, 80 Vt. 449; *United States* v. *Northwestern Fisheries Co.*, 224 Fed. Rep. 274; *Griswold* v. *New York Ins. Co.*, 1 Johns. 205.) The evidence is, as a matter of law, insufficient to sustain the judgment of conviction. (*Corbin* v. *United States*, 181 Fed. Rep. 296.)

*Paul Windels, Corporation Counsel (Ralph W. Thomas* and *Paxton Blair* of counsel), for respondent. The meat consisted of parts of carcasses and fell expressly within the scope of section 172 of the Sanitary Code requiring such parts to be marked, stamped or branded as having been inspected and passed. (*People* v. *French Bottling Works*, 259 N. Y. 4.) It was proved beyond a reasonable doubt that at least twenty-eight pieces showed no marks of branding or stamping whatsoever and that is sufficient to sustain the conviction. (*People* v. *French Bottling Works*, 259 N. Y. 4; *MacRae* v. *Chelsea Fibre Mills*, 145 App. Div. 588; *Jorgensen* v. *Jaeger*, 257 N. Y. 171; *Gilbert* v. *Rosen*, 232 N. Y. 296; *Matter of Case*, 214 N. Y. 199; *Faber* v. *City of New York*, 213 N. Y. 411; *People ex rel. Stephenson* v. *Bingham*, 205 N. Y. 168; *Otten* v. *Manhattan Ry. Co.*, 150 N. Y. 395.)

Hubbs, J. The appellant has been convicted of a violation of section 172 of the Sanitary Code of the city of New York in keeping and offering for sale thirty pieces of meat contained in barrels, which were parts of carcasses of steers and which were not inspected and passed as fit for human food by a duly authorized inspector of the United States Department of Agriculture and were not marked, stamped or branded as having been so inspected and passed.

The appellant was engaged in business as a wholesale dealer in meats in the city of New York. On June 6, 1933, he shipped by truck from his place of business to Isaac Gellis, Inc., in Manhattan, fourteen sealed barrels containing 1,400 pieces of meat (known as navel pieces), weighing 5,092 pounds. Upon the arrival of the fourteen barrels of meat, the shipment was inspected and it was found that the barrels had affixed thereto United States domestic meat labels reading " Market Inspection No. 2. The meat or meat food product contained herein has been United States inspected and passed by Department of Agriculture. Bronx Meat Company, 463 Westchester Avenue, Bronx, New York. Domestic Meat Label," and that they also bore a United States inspection stamp reading " Market No. 2. Inspected and passed. U. S."

The barrels were opened and it was found that they contained thirty pieces of meat which were not marked with an inspection mark. The People produced no other testimony of importance.

The defendant produced his shipping clerk who testified in substance that on June 5th he received an order to prepare the meat for Isaac Gellis, Inc.; that the meat in question was in the kosher section of the cooler under seal; that the defendant had facilities for United States market inspection on the premises; that he called the inspector at the government office in the Westchester market and told him he had plates of beef to be inspected as he wanted to prepare fourteen barrels of meat; that

the inspector came to the plant; that a rabbi opened the seal on the cooler; that he went in the cooler; that the plates of meat were hanging on hooks; that he lifted each plate for the inspector to see the original slaughter house markings on the meat, that is, the markings showing government inspection at the slaughter house; that the original slaughter house brand was on each plate; that the inspector gave him the market No. 2 brand, a brand prescribed by the Department of Agriculture and used only on meat subject to market inspection in the city of New York; that in the presence of the inspector he branded every plate, every cut of meat; that he branded all the meat that was in the kosher section; that the meat, after being cut, was shipped to Isaac Gellis, Inc.; that there was no other meat that went into the shipment to Isaac Gellis, Inc.; that after the meat had been cut up and when the shipment was ready for packing in barrels, he called the meat inspector and the meat inspector supervised the packing of the barrels and issued domestic meat labels, then sealed them and shipped them out; that there was no meat in the barrels that was not inspected and passed on June 5th, and no meat in the barrels that was not branded on June 5th; that he got the labels for the containers from the government inspector in charge at the time.

The defendant also called the United States government meat inspector, Huddleston, who, on June 5th, examined the meat in the kosher section of defendant's cooler. He testified that he inspected about seventy hooks or plates of meat so he could read the brand from the slaughter house; that he supervised the branding, the application of the market No. 2 brand; that he inspected all the plates there were in the kosher section; that they were all sound and had the original slaughter house stamp on; that the market brand is a brass stamp; that it prints the market brand in purple ink; that he was not there when the meat was shipped or put in barrels; that that was his last day

in Westchester market and he was not there on June 6th. Inspector Rafferty testified that no particular inspector was assigned to the premises of the Bronx Meat Company, that they are changed from time to time; that at all times two inspectors are assigned to the Westchester market. It, therefore, appears that the fact that Huddleston did not supervise the packing on June 6th is no indication that the testimony of the shipping clerk as to that inspection is untrue.

There is no contention that the thirty pieces of meat found in the barrels and claimed to have lacked a proper market brand were in any particular unfit for human consumption. In fact, the inspectors who examined the meat and testified for the People admitted that the meat was sound. The conviction must stand, if at all, upon the fact that there was found in the barrels at the Gellis establishment thirty pieces of meat upon which no market inspection brand could be identified.

Section 172 of the Sanitary Code (Code of Ordinances of City of New York, ch. 20, art. 9) provides as follows:

" § 172. Sale of the carcasses of certain animals and dressed birds, poultry and fowl restricted. No carcasses or parts of the carcasses of * * * steers * * * shall be brought into the city of New York or held, kept, offered for sale or sold for human food therein until they shall, respectively, have been inspected and passed as fit for human food by a duly authorized inspection of the United States Department of Agriculture, and shall have been marked, stamped or branded as having been so inspected and passed. Provided * * * shall not apply to the carcasses * * * to which are attached * * * the lungs, the liver * * *." (Adopted by the Board of Health, June 28, 1917, amended August 10, 1926, June 5, 1928, and further amended April 1, 1930.)

Rules for meat inspection are prescribed by regulations adopted by the Secretary of Agriculture of the United States pursuant to the Meat Inspection Act, sections

1–21 (34 Stat. 674, 1260; United States Code Ann. tit. 21, ch. 4, §§ 71–91). Defendant's establishment, being one at which market inspection, as provided for under those regulations, is maintained, the regulations in so far as they provide for market inspection, are necessary to be considered in determining what constitutes " a duly authorized inspection of the United States Department of Agriculture," and whether the thirty pieces of meat in question had been " marked, stamped or branded as having been so inspected and passed."

Regulation 19 of the Regulations Governing the Meat Inspection of the United States Department of Agriculture provides:

" Section 1, Paragraph 1. Market inspection may be established to provide for the interstate transportation or export, from public markets, and other places, of portions of inspected and passed meat and products which, when cut or otherwise removed from a marked carcass, part, or container, do not show the inspection legend. Each city in which market inspection is established shall be assigned an official number by the chief of bureau, and all articles transported under such inspection shall bear the inspection legend and the official number of the city.

" Section 1, Paragraph 2.    *    *    *

" Section 2. Unmarked portions cut from a marked carcass or part or removed from a marked container, under market inspection, for interstate transportation or for export, shall be inspected by a bureau employee at the time they are so cut or removed, and, if found to be sound, healthful, wholesome, and fit for human food, shall be marked with the inspection legend. Whenever practicable, the brand shall be applied to the meat itself. When this cannot be done, the container thereof shall be marked, for interstate transportation, as required by Regulation 16, or, for export, as required by Regulation 24."

The United States Department of Agriculture maintains no inspection service for meat not intended for

interstate transportation or for export, except that under section 1, paragraph 1, of regulation 18, it is provided that " All meat and products, whether fresh or cured, even though previously inspected and passed, shall be reinspected by bureau employees as often as may be necessary, in order to ascertain whether the same are sound, healthful, wholesome, and fit for human food at the time the same leave official establishments,   *   *   *."

Hence, in providing, by section 172 of the Sanitary Code, for " a duly authorized inspection of the United States Department of Agriculture," there must have been intended that form of inspection and only that form required in case of meat prepared for interstate transportation or export, and such reinspection as is provided for under the Federal regulations. A municipal act could not impose upon Federal inspectors duties not prescribed by the Federal act and the regulations adopted pursuant thereto.

In order to sustain the conviction of defendant, it must appear, beyond a reasonable doubt, that the thirty pieces of meat had not been " inspected and passed as fit for human food by a duly authorized inspection of the United States Department of Agriculture," and were not " marked, stamped or branded as having been so inspected and passed."

There is nothing in the Federal regulations which requires inspection at the time the meat is packed for shipment except for the purpose of determining that meat previously inspected and passed is still fit for human consumption and upon such reinspection there is no requirement that meat previously passed and marked shall be remarked.  The reinspection as testified to on behalf of defendant and not disputed does show an intent on the part of the defendant to take advantage of the reinspection service.  The fact that the containers bore the market No. 2 legend further evidences the fact of the reinspection though it does not go to the extent of afford-

ing the required proof of inspection for the reason that it is undisputed that the pieces in question were of a size to make it practicable to apply the brand to the meat itself.

Since the Federal regulations do not require that the meat shall be inspected and marked at the time it is packed for shipment, but rather when it is cut from a marked portion, if these pieces of meat were marked when inspected on June 5th, that is all that was required to bring them within the class of meat permitted to be had, kept and offered for sale. Upon that question we have the positive testimony of the shipping clerk, supported in the main by the testimony of the United States inspector who made the inspection, to the effect that every cut of meat in the particular section of the cooler was inspected, passed and marked with the market No. 2 brand, and the further testimony of the shipping clerk that no other meat went into the shipment. There is testimony that after the meat was so branded, it was cut, boned and trimmed with the resultant possibility, admitted by the United States inspector, Rafferty, who testified for the People, that in boning and trimming a few pieces might become mussed up so that the brand would not be recognizable. With no requirement for remarking upon reinspection, and no requirement for reinspection except when necessary to ascertain that the meat was still fit for human consumption, pieces of meat, once inspected and marked, were still entitled to be had, kept and offered for sale despite obliteration of the marks. If there is competent and sufficient proof to establish beyond a reasonable doubt that they were not inspected and passed pieces of meat and that they had never been marked as such, then the conviction of defendant may stand, otherwise not.

The only proof offered by the People is to the effect that when received at the Gellis establishment these thirty pieces out of a total of 1,400 did not contain identifiable

inspection legends. That they did not then contain identifiable inspection legends does not raise a presumption that they were absent when inspected and passed. (*Corbin & Co.* v. *United States*, 181 Fed. Rep. 296; Jones on Evidence [2d ed.], § 58, note 2, and cases cited at end of note.)

Even if the proof offered by the People were to be deemed sufficient to raise a presumption that the pieces of meat had never been marked, the positive testimony as to inspection, passing and marking and as to the possibility of obliteration of marks offered by the defendant is sufficient to overcome that presumption and to make it impossible for the court to say, beyond a reasonable doubt, that the pieces had not been inspected, passed and marked. No proof whatever was offered upon the part of the People to establish that the meat had not been inspected and passed.

There is here nothing in the quality of the meat to raise a presumption of intent to violate the statute or to afford a motive therefor. There is evidence of intent to comply with the statute in the calling of two inspectors on succeeding days to examine the meat. To find that the meat was not inspected and passed and was unmarked involves the necessity of finding that one or both of the Federal inspectors failed to perform his duty. There is, of course, a contrary presumption.

The judgment should be reversed, and the information dismissed.

CRANE, LEHMAN and LOUGHRAN, JJ., concur; POUND, Ch. J., O'BRIEN and CROUCH, JJ., dissent.

Judgment reversed, etc.